Harry SCOUFOS, Administrator of the Estate of Buster Chisholm, Deceased, et al., Plaintiffs in Error,

v.

J. D. FULLER, an Incompetent, et al., Defendants in Error.

Nos. 36051, 36052.

Supreme Court of Oklahoma.

Dec. 21, 1954.

Rehearing Denied March 8, 1955.

Clem H. Stephenson, Wewoka, and T. L. Gibson, Muskogee, for plaintiffs in error.

Tom Greer, J. A. Patterson and Buck Cartwright, Wewoka, and Clyde F. Ross, Okemah, for defendants in error.

HALLEY, Chief Justice.

A statement of the principal facts from which these actions arose appears desirable for an understanding of the issues involved in this appeal.

July 19, 1939, J. D. Fuller and Martha Jackson, a full-blood restricted Indian, were married.

On February 16, 1940, J. D. Fuller filed a petition for divorce and $50,000 alimony in the District Court of Okfuskee County, alleging serious grounds for divorce and that Martha had about $200,000 on deposit with the Department of Interior and other property and praying for $50,000 alimony. Martha filed an answer and cross-petition praying for a divorce.

About 10 days after J. D. Fuller had filed his petition for a divorce he suffered a serious head injury and was confined to a hospital for about five weeks, the first two weeks of which he was in a state of coma.

After J. D. Fuller was released from the hospital he went to the home of his father, A. N. Fuller, in Johnston County and on May 23, 1940, the County Court of that County appointed A. N. Fuller the guardian of J. D. Fuller as an incompetent. On June 12, 1940, the guardian filed an amended petition in the divorce action praying for judgment for $50,000 alimony, alleging that he was penniless, afflicted with disease and unable to earn a living. The amended petition did not contain a prayer for divorce, but was amended at the time it was heard by praying for a divorce. The court appointed a guardian ad litem who adopted the pleading of the guardian of J. D. Fuller as an incompetent.

On July 17, 1940, the divorce action was tried and J. D. Fuller was granted a divorce and support money in the sum of $10,000. This money judgment was later settled for $5,000 with the approval of the County Court appointing a guardian for J. D. Fuller, an incompetent.

January 29, 1942, the County Court of Atoka County adjudged J. D. Fuller to be insane and committed him to the State Hospital at Vinita from which he was released April 12, 1949, but he has never been restored to competency.

October 17, 1944, some four years after the divorce decree was entered, Martha married Buster Chisholm, with whom she lived as his wife until her death on July 9, 1949. Buster Chisholm filed an application to probate her will, but he died July 21, 1949 and Harry Scoufos was appointed administrator of his estate.

L. V. Hollis petitioned to probate a later will of Martha's and the guardian of J. D. Fuller filed objections to the probate of Martha's will and claimed that he was the surviving husband of Martha. L. V. Hollis answered that J. D. Fuller had been divorced from Martha in 1940. The County Court admitted the will to probate and denied the claim of J. D. Fuller. This judgment was not appealed from and became final, but the only real issue involved was the factum of the will.

L. V. Hollis, as executor of the will of Martha Jackson Chisholm filed a final report and petition for determination of heirs under Martha.

May 2, 1951, the guardian of J. D. Fuller filed a petition to vacate the divorce decree

of July 27, 1940, more than 10 years after it was rendered.

The guardian of J. D. Fuller filed an answer to the petition to determine the heirs of Martha and again set up that J. D. Fuller was her surviving husband. The County Court held that the divorce decree of 1940 was void on the face of the record and that J. D. Fuller was the surviving husband and "forced" heir of Martha.

The administrator of the estate for Buster Chisholm appealed to the District Court and on November 24, 1952, the District Court held the divorce decree void on the face of the record and vacated the divorce decree.

The finding in the will case that J. D. Fuller was the surviving husband of Martha and the decree holding that the divorce decree was invalid necessarily resulted to the same effect, which is, that J. D. Fuller was the husband of Martha after their marriage in 1939 and is now her surviving husband and heir because there had been no valid divorce decree dissolving their marriage.

It is clear that unless the divorce decree is void on the face of the record, or judgment roll, it cannot be attacked after it has remained unchallenged of record for more than 10 years.

Section 1031, 12 O.S.1951, sets out the power of a District Court to vacate or modify its judgments. Section 1038, 12 O.S. 1951, provides limitations controlling when judgments may be vacated or modified. The last sentence of this section is as follows:

"A void judgment may be vacated at any time, on motion of a party, or any person affected thereby."

■ This Court has held in numerous cases that in order for a judgment to be void as provided in the Statute just quoted, it must be void on the face of the record, and that extrinsic evidence is not admissible to show judgment is void on the face of the record.

In Steiner v. Smith, 115 Okl. 205, 242 P. 207, 209, it was said in the body of the opinion:

"We think the rule is too well established to require the citation of authorities that, where the judgment is sought to be vacated on the grounds that it is void upon its face, the defects must be patent on the face of the record and no outside testimony is permissible to show its invalidity."

Harry Scoufos, as administrator of the estate of Buster Chisholm, deceased, has appealed and contends that the divorce decree is valid; that J. D. Fuller is estopped from attacking a decree which he obtained; that the court erred in admitting extrinsic evidence; that the judgment of the County Court in the probate case in holding that J. D. Fuller was not Martha's husband is res judicata; that J. D. Fuller did not overcome the presumption that the marriage of J. D. Fuller and Martha was legally dissolved; and, that Buster Chisholm inherited one-half of her property, except restricted lands.

■ Is the divorce decree void on the face of the record? The rule as to what defect must appear on the face of the record in order to render a decree void and to subject it to attack at any time is aptly set out in State ex rel. Commissioners of Land Office v. Keller, Okl., 264 P.2d 742, where it is announced that for a judgment to be void on the face of the record it must appear on the face of the judgment roll or record, that the court rendering the judgment lacked (1) jurisdiction over the parties, (2) jurisdiction over the subject matter, or (3) jurisdictional power to render the particular judgment rendered.

■ Here the court had jurisdiction over the parties, the subject matter and power to render the divorce decree. But it is contended that the District Court of Okfuskee County was divested of the power to render judgment because prior to the rendition the County Court of Johnston County had adjudicated J. D. Fuller an incompetent and a guardian had been appointed for him. It is admitted that J. D. Fuller was competent when he filed his divorce action. The defendants in error assert that J. D. Fuller was insane at the time the divorce decree was rendered, despite the fact that he ap-

peared in that action by a guardian ad litem and by his regular guardian as an incompetent. This Court has held that the appointment of a guardian for a mentally incompetent person is not an adjudication of insanity. In the case of Fish v. Deaver, 71 Okl. 177, 176 P. 251, the Court discussed the terms "mentally incompetent," "incompetent" and "incapable" as used in the Statutes authorizing the appointment of a guardian for such persons and said in the first and second paragraphs of the syllabus:

"The descriptive words 'mentally incompetent,' and 'incompetent,' and 'incapable,' as used in sections 6538 and 6539, Rev.Laws 1910 [58 O.S.1951 §§ 851, 852], mean any person who, though not insane, is by reason of old age, disease, weakness of mind, or from any other cause, unable or incapable, unassisted, of properly taking care of himself or managing his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons.

"Mental incompetency or incapacity is established when there is found to exist an essential privation of the reasoning faculties, or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life."

We do not think that the record in the original divorce action justifies the assumption that J. D. Fuller was insane at the time the divorce decree was entered even though he had been adjudged incompetent. Many persons who are not insane have guardians appointed for them as incompetents because some of them are unable to manage their property in a discreet manner through lack of education, experience, and other unusual characteristics. Certainly one may be incompetent to manage his own affairs for his best interest and yet not be insane.

Those who seek to have the divorce judgment declared void on the face of the record cite many cases from other jurisdictions holding that the guardian of an insane person cannot institute or maintain an action for divorce. Those cases have a different fact situation in that insanity existed at time of the filing of the divorce action and therefore have no application to the issues presented in the case at bar.

This Court held in In re Nitey's Estate, 175 Okl. 389, 53 P.2d 215, 219, that where the maker of a will had been adjudged an incompetent and a guardian appointed prior to the execution of the will, that no presumption of want of testamentary capacity arose from the fact of guardianship as an incompetent. If being adjudged an incompetent and having a guardian appointed does not deprive one of testamentary capacity, such circumstances would not deprive one of capacity to continue a divorce proceeding after being adjudged an incompetent.

The capacity to determine the question of the disposition of one's property after death is also a personal matter and requires the same character of personal volition as is required of one in determining whether a continuation of the marriage relation is desired by one who, while fully competent, has decided that an end to such relation is desired.

While it is true that the trial court found in the divorce decree of July 27, 1940, that J. D. Fuller was "wholly incompetent mentally and totally disabled physically, from performing any labor of any character and from carrying on the affairs of life; * * * and that his condition requires the constant care and attention and surveillance of his father or some person or guard * * *, and that J. D. Fuller was mentally incapable of testifying about all of the facts alleged and set out in the original petition", it will be noted that the court did not find J. D. Fuller was insane.

The court making the above findings granted J. D. Fuller a divorce and support money or alimony in the sum of $10,000. There is no suggestion by the court that J. D. Fuller was insane or should have been so adjudged and committed to a mental institution.

In Re Nitey's Estate, supra, it is said:

" * * * Section 1449, C.O.S.1921, which is the statute under which Nitey was adjudicated to be an incompetent (Id. section 1445, O.S.1931), recognizes

two classes of persons for whom a guardian can be appointed, one, 'insane' persons, and the other, persons who from any cause are 'mentally incompetent to manage their property.' * * *.

"The word 'insane' lexically 'signifies delirious; deranged in mind, distracted; unsound in mind or intellect.' 32 C.J. 613. * * *"

After J. D. Fuller had been adjudged insane he was incapable of deciding whether he desired a divorce from Martha. She died before he brought a direct action to have the divorce decree set aside. If he could not prosecute a divorce action filed while he was admittedly incapable of deciding whether he desired a divorce, we do not think that he may now seek to set aside the divorce decree after being adjudged insane. He is now an insane person and under the authorities cited from 46 States an insane person may not institute or maintain a divorce action by a guardian or Committee. Since he is an insane person, we do not think he is now capable of making the personal decision that he wishes to condone the offenses alleged in his divorce petition and have the divorce decree vacated.

 The judgment appealed from brands Martha Jackson Chisholm a bigamist. She is not here to defend herself. To vacate the divorce decree after so many years would be gross injustice. She did not remarry until about four years after the divorce decree was rendered. We think the majority rule that an insane person may not institute or maintain a divorce action by guardian or Committee, is sound and fair. We also think the same rule should be applied to an insane person who seeks to have a divorce decree vacated because the vacation of such decree requires the same personal decision as is required by one seeking a divorce. The divorce decree severs the marital relation and requires a personal decision. The vacation of such decree restores the marriage relation where both parties are living and requires the same exercise of personal decision as is re-

quired in deciding that a divorce is desired. An insane person is incapable of making either decision.

While it is not necessary to discuss the other issues raised by the plaintiffs in error, we note that this Court has held that one obtaining a divorce may not have the decree vacated after the death of the other party. In Carson v. Carson, 141 Okl. 106, 283 P. 1015, the rule is announced in the first paragraph of the syllabus as follows:

"A judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll, but it is not void in the legal sense for the want of jurisdiction, unless its invalidity appears on the face of the record. Pettis v. Johnston, 78 Okl. 277, 190 P. 681."

In Crowther v. Schoonover, 130 Okl. 249, 266 P. 777, this Court announced the rule in the first paragraph of the syllabus as follows:

"The provision of the statute that a void judgment may be vacated at any time on motion applies only when the invalidity of the judgment appears on the face of the judgment roll."

In the last cited case, the Court quoted from B-R Electric & Telephone Mfg. Co. v. Town of Wewoka, 113 Okl. 225, 239 P. 919, as follows:

"If it be necessary to resort to extrinsic evidence to show the invalidity of a judgment, the motion to vacate must be presented within three years following the rendition of the judgment or order, as provided for in section 817, Comp.St.1921 [12 O.S.1951 § 1038]."

 The divorce decree sought to be set aside was rendered more than 10 years prior to the time it was sought to be vacated. Extrinsic evidence was introduced consisting of six witnesses and documentary evidence in an effort to show that the divorce decree was void.

Since the trial court found that J. D. Fuller was incompetent, but did not find that he was insane, we think that it was

error to admit extrinsic evidence tending to show that J. D. Fuller had been insane since prior to the date when the divorce decree was rendered in 1940.

Both judgments appealed from are reversed in so far as they hold that the divorce decree was void and that J. D. Fuller is the surviving husband of Martha Jackson Chisholm, deceased, with directions to enter judgment holding the divorce decree valid and that Buster Chisholm was the surviving husband of Martha Jackson Chisholm, deceased.

JOHNSON, V. C. J., and WELCH, CORN, DAVISON, O'NEAL and WILLIAMS, JJ., concur.