Vernon E. PELLOW, Jr., Appellee,

v.

Nancy A. PELLOW, Appellant.

No. 61677, 61135.

Supreme Court of Oklahoma.

Oct. 22, 1985.

Rehearing Denied Dec. 10, 1985.

As Corrected March 13, 1986.

Marti Hirst, Oklahoma City, for appellant.

Gary W. Davis, Marie Weston Evans, Crowe & Dunlevy, Oklahoma City, for appellee.

SUMMERS, Justice.

This case began on October 8, 1982 when Vernon E. Pellow, Jr. (Appellee) filed his petition for divorce in the District Court of Oklahoma County. In excess of forty pleadings were filed in the case before a decree of divorce was entered on August 31, 1983, granting a divorce to each of the parties on the grounds of incompatibility. A hand-written Property Settlement Agreement was signed by the parties and their counsels. The parties were sworn by the court and the court inquired of the parties whether or not they "understood what they had agreed upon and that everybody was satisfied". (Tr. 6, January 26, 1984: R. 341). Unfortunately, due to the lateness of the hour, no court reporter was available. No objections were raised by either party to the entering of a decree of divorce.

Appellant filed her petition in error appealing from the Property Settlement Agreement on September 30, 1983. Appellant did not request reversal of the granting of the divorce. On October 7, 1983, the trial court heard appellee's Motion to Settle Journal Entry. The court ordered that the hand-written Property Settlement Agreement signed by the parties and their counsel on August 31, 1983 be attached to the decree of divorce and incorporated therein.

On October 25, 1983, appellant's amended petition in error expanded the issues to be appealed regarding the Property Settlement Agreement. No appeal was taken from the granting of the divorce itself.

Appellee filed his response in motions to dismiss on November 14, 1983 and amended response on December 2, 1983. On January 25, 1984, five months after the entry of the decree of divorce appellant filed her second amended petition in error seeking for the first time to reverse granting of the divorce and further expanding the issues on appeal. Also on this date appellant filed her Motion for Temporary Relief Pending Appeal and for Stay of Execution in Appeal No. 61135. Concurrently, appellant filed a separate appeal of the trial court's denial of her Motion for Temporary Relief and Stay of Execution under Appeal No. 61677.

On or about January 31, 1984, appellee died in a plane crash in Mexico.

February 21, 1984, and on February 23, 1984, appellant filed objection to this court's jurisdiction and moved to dismiss her appeals. The appeals were dismissed by Order of this court on February 27, 1984. On application of appellant, the appeals were reinstated consolidating under surviving number 61,677. Appellants objections to jurisdiction and motion to dismiss, treated as a motion for summary of reversal was denied by Order of this court dated March 31, 1984.

Richard B. Pellow, brother of decedent appellee, having been appointed Personal Representative in the probate court, was substituted for appellee by Order of this court dated April 11, 1984. On April 30, 1984, this court by its Order denied stay of the trial court's adjudication directing appellant to deliver possession of real property. The court declined the appellant's motion to reconsider on May 29, 1984.

Appellant filed her third amended petition in error on June 11, 1984 with her brief in chief. Appellees responded on July 2, 1984.

## I.

## DID THE TRIAL COURT PROPERLY GRANT A DIVORCE TO BOTH PARTIES?

Appellant first asserts that the trial court was without authority to enter any judgment "based upon a nonconsentual (sic) agreement, and the entire proceeding wherein the Court attempted to render judgment, should be set aside, vacated and held for naught". (p. 17, brief in chief)

 In Oklahoma, judgment is rendered when pronounced. The entry of the written memorial upon the court's journal is not essential to the validity of the judgment, and failure to properly file a journal entry of judgment does not render judgment void.[1] On August 31, 1983 the trial court entered a minute which stated "divorce granted to both parties all as per journal entry". (R. 444)

The following comments of the trial court judge in a hearing subsequent to the divorce support the consensual nature of the divorce and the Property Settlement Agreement:

"1. ... It was my considered opinion when I asked her (Appellant) and I felt that she was competent at the time, she appeared to be competent, and she was capable of signing that agreement, she was not physically infirm or anything else that I noted, and that was the time to have spoke (sic) up then because we were in chambers, the divorce was granted in chambers, but all the witnesses were sworn and she was asked those questions by me.... And, if she felt that she was being coerced, she should have spoke (sic) up at that time because this Court would not have permitted or granted the divorce if anybody's (sic) given any inkling of thought to me that there was any coercion. ... But, I cannot see the appellate court overturning something that everybody agreed to and that the Court approved and that they all knew or advised the Court they knew what they were doing." (Tr. 10; Hearing of October 7, 1983; R. 313)

"2. Ms. Hirst, the Court was present when the parties came in front of it and they advised me and I asked each one of them individually if this was agreed-upon divorce, they had been working all day on it, apparently the terms were satisfactory to both ties, I made sure of that before I approved it and before I granted the divorce." (Emphasis added.) (Tr. 48; Hearing of January 3, 1984; R. 445)

"3. I'm not addressing myself to the agreed-upon Journal Entry which, in my opinion, was agreed upon and at the time she came forward she was represented by counsel as well as Mr. Pellow. We did not have a court reporter, unfortunately, due to the lateness of the hour, but *I made a very strong point of making sure that*

---

1. *Miller v. Miller,* 664 P.2d 1032 (Okl.1983).

*everybody understood what they had agreed upon and that everybody was satisfied* ... They were both sworn. It was not just I divorce you or any of that kind of stuff ... because I knew that there was a lot involved because the parties had been outside the court-room all day. I'd observed them, their negotiations, they had the jury room to themselves. I don't know what went on in there, but when they all emerged, came into my chambers, everybody sat down and *I went over it with them.*" (Emphasis added.) (Tr. 6; Hearing of January 26, 1984; R. 341)

The testimony of appellant's own counsel also evidences the consensual nature of the divorce and property settlement. Robert J. Unruh testified as he participated in the agreement negotiations (Tr. 88) as counsel for the appellant: the parties went over a list of property in detail (Tr. 84–85); the court saw the memorandum and the parties were before it, with the list which had been worked on during the settlement negotiations (Tr. 89); he read aloud the Property Settlement Agreement and appellant looked at it again afterwards (Tr. 92). And in answer to the question: "And did Mrs. Pellow at that time agree to what had been written, he answered "yes". (Tr. 92) Appellee's formalized property settlement agreement "very thoroughly and detailed set out the explanation of the list (referring to appellee's typed-written agreement) (Tr. 92); appellant rejected the agreement of the parties "after the settlement". (Tr. 94) Appellant's own testimony at the same hearing indicates that she was fully advised what she was agreeing to and that there was in fact an agreement. (Tr. 99)

Furthermore, Rule 1.17 "Amendment of Petition in Error"[2] states in pertinent part:

(a) Time and extent of amendment

The petition in error may be amended at any time before brief in chief is filed, or thereafter by leave of court, to include any error or *any issue presented to and*

*resolved by the trial court which is supported by the record,* but if a party has filed a motion for new trial, errors either not alleged in that motion or not fairly comprised within the grounds alleged therein may not be asserted on appeal by such party. 12 O.S Supp.1969 § 991(b). (emphasis added)

Appellant, the defendant in the trial court, filed an answer to petition and cross-petition. In the cross-petition, appellant alleges, inter alia,:

"3. Said cross-petitioner states that the parties have become irreconcilably incompatible, because of the wrongful conduct and fault of Plaintiff. That as a result of the irreconcilable incompatibility existing between the parties. Cross-Petitioner should be granted a divorce from Plaintiff."

The Decree of Divorce entered on August 31, 1983 states, "... both parties hereto are granted a divorce each of the other...."

Appellant prayed for and was granted a divorce. At no time before the decree was entered, at the time the decree was entered, or in a post-decree motion did appellant object of record that the court should not grant the divorce. It was not until appellant's second-amended petition in error filed January 25, 1984, some five months after the decree was entered, that appellant raised the issue of reversing the granting of the divorce.

Rule 1.17(a) allows the petition in error to be amended to include an issue but *only* an "issue presented to and resolved by the trial court which is supported by the record". The issue of "granting of the divorce" is not an issue that was "presented to the trial court" and cannot be presented for review by this court for the first time in the second-amended petition in error some five months after the decree was entered.

In addition, appellant's post-decree conduct is inconsistent with 12 O.S. §§ 1282[3]

2. Rules of Appellate Procedure in Civil Cases, T. 12, Ch. 15, App. 2.

3. 12 O.S.1981 § 1282 states:

and 1280 conduct. If a timely appeal is taken from the granting of the divorce itself, the other party is on notice not to marry until thirty (30) days from the date on which final judgment is rendered pursuant to such appeal.[4] Here, the appellant did not raise the issue of reversing the granting of the divorce itself until the second-amended petition in error some five months from the date of the decree. 12 O.S. § 1280 makes it a felony (bigamy) to marry or to cohabit (adultery) until the decree is final.

■ We find that the issue of whether or not the divorce should have been granted is not an "issue presented to and resolved by the trial court which is supported by the record". Therefore, appellant can not properly add this issue pursuant to Rule 1.17 in her second-amended and third-amended petition in error.

We hold that the divorce granted August 31, 1983 is valid and final.

## II.

## WHAT IS THE LEGAL EFFECT OF THE DEATH OF THE APPELLEE ON THE DIVORCE AND PENDING APPEAL?

The appellee died in a plane crash in Mexico on or about January 31, 1984. Appellant asks that the parties be restored to their pre-divorce status. She alleges that at all times that she has contested the court entering the decree of divorce and cites 12 O.S. 1981 § 1282 which states, *inter alia:*

> Time when judgments in divorce actions become final—Effect of appeal
> Every decree of divorce shall recite the day and date when the judgment was rendered. If an appeal be taken from a judgment granting or denying a divorce, that part of the judgment does not become final and take effect until the appeal is determined. If an appeal be taken from any part of a judgment in a divorce action *except the granting of the divorce,* the divorce shall be final and take effect from the date the decree of divorce is rendered, provided neither party thereto may marry another person until six (6) months

> "If an appeal be taken from a judgment granting or denying a divorce, that part of the judgment does not become final and take effect until the appeal is determined."

Appellant maintains that "no parts of the judgment entered by the trial court on August 31, 1983, or subsequent judgments of October 7, 1983, became final until the appeal is determined in this matter under the authority of *12 O.S.1982.*" (p. 53, brief-in-chief). Appellant urges this argument in support of her proposition that where appellant perfected an appeal of the validity of the granting of a divorce, and appellee dies thereafter, the Supreme Court should enter a finding, that the death of appellee pending appeal, prior to a final judgment, abates the divorce proceeding and restores the parties to pre-divorce status as husband and wife. (P. 52, brief in chief)

We held above that the issue of the granting of the divorce was not an "issue presented to and resolved by the trial court which is supported by the record" and cannot be added as an issue on appeal in an amended petition in error. The divorce is final. The issue of the property settlement will be addressed in the next section of this opinion.

■ A cause of action for a divorce is purely personal, and it has been held that such a cause of action terminates on the death of either spouse *before* the entry of the final decree. In effect, the trial court is deprived of its jurisdiction. If, on the other hand, the trial court has entered a decree, it has been held that the death of a spouse does not affect the matter. This court has held in *Mabry v. Baird:*

> after the date the decree of divorce is rendered; that part of the judgment appealed shall not become final and take effect until the appeal be determined. (emphasis added)

**4.** 12 O.S.1981 § 1280 states in part:

> "[A]nd if an appeal be commenced from said decree, it shall be unlawful for either party to such cause to marry any other person and cohabit with such person in this state until the expiration of thirty (30) days from the date on which final judgment shall be rendered pursuant to such appeal."

"[T]he death of a party to a divorce action prior to rendition of a final judgment therein terminates the status or relationship of marriage theretofore existing and leaves the parties as though the action had never been brought. Since we hold that the judgment of the trial court on April 7th, was a final judgment, the rule of law above announced and the authorities cited in support thereof by plaintiff have no application to the instant case." [5]

In *Chastain v. Posey* this court citing the above in *Mabry v. Baird* with approval, concluded:

"[B]ut the divorce suit does not abate on the death of a party after final judgment is rendered ...." [6]

Also the cases are in accord in sustaining the proposition that where the decree of divorce affects the property rights of the parties, the death of a party pending the appeal from the decree or during the time allowed for appeal does not abate the appeal, and the appellate court may review and determine the correctness of the decree insofar as such property rights are concerned.[7] This court said in *Siler v. Siler*:

"It also appears that it is generally recognized that the death of a party in a divorce action after the rendition of the decree granting a divorce does not prevent a judicial review of the decree where property rights are involved." [8]

■ Under 12 O.S.1981 § 1282 and in light of the facts of this case where there has been no attempt to raise as error the issuance of the divorce until the second-amended petition in error some five months after the decree was entered, the death of the appellee has no legal effect on the status determination of divorce. The status determination of divorce was effective the date of rendition, August 31, 1983.

■ Because the decree of divorce in this case affects the property rights of the parties, the death of the appellee does not abate this pending appeal and this court may review and determine the correctness of the decree insofar as such property rights are concerned.

### III.

### IS THE PROPERTY SETTLEMENT AGREEMENT VOID AS AGAINST PUBLIC POLICY?

The appellant raises in her second proposition that the purported property settlement agreement and purported consent decree based thereon should be vacated and set aside for the reason that the consideration therefor was illegal. The appellant directs attention to item number 14 in the Property Settlement Agreement which states as follows:

"Defendant will express her desire to the Oklahoma District Attorney that she desires to dismiss the pending criminal case as to Vernon E. Pellow, Jr. only." [9]

Appellant states that bargains for the compromising of crime or stifling of the prosecution thereto, are universally disapproved in all jurisdictions. She alleges that the decree of divorce entered August 31, 1983, is founded upon a purported property settlement agreement which is based upon illegal consideration. Appellant cites 12 O.S.1981 §§ 211–212 in support of her proposition. It appears that she is referring to 15 O.S.1981 §§ 211–212. 15 O.S. § 212 states:

"All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or wilfull injury to person or prop-

---

**5.** 203 Okl. 212, 219 P.2d 234, 239 (1950).

**6.** 665 P.2d 1179, 1181 (Okl.1983).

**7.** *Siler v. Siler*, 350 P.2d 510 (Okl.1960); *Polvado v. Polvado*, 565 S.W.2d 595 (Tex.Civ.App.1978); *In Re Marriage of Garlinski*, 99 Ill.App.3d 107, 54 Ill.Dec. 510, 425 N.E.2d 22 (1981); *Libby v. Libby*, 23 Or.App. 223, 541 P.2d 1077 (1975);

also see 27A C.J.S. Divorce § 188a, p. 783; 4 Am.Jur.2d Appeal and Error § 282.

**8.** Id at 513.

**9.** A misdemeanor assault and battery charge was pending against him upon her complaint.

erty of another or violation of law, whether wilfull or negligent, are against the policy of the law."

 We first note that the appellee is not seeking to enforce this portion of the contract. Further, we do not find that the property agreement had as its primary end, intention or aim, the exoneration of the appellee from criminal liability. In this agreement we have legal promises on one side being wholly supported by legal promises on the other side, and the alleged illegal portion of the agreement does not go to its essence. We find the entire agreement before us is not rendered void because a severable clause therein may be against public policy.[10]

### IV.

IS THERE A JUDGMENT INCORPORATING A PROPERTY SETTLEMENT AGREEMENT SUSCEPTIBLE TO REVIEW BY THIS COURT?

A hearing on the appellee's motion to settle journal entry was had on October 7, 1983. Parties on August 31, 1983 had reached a property settlement agreement that was hand-written and signed by both parties and witnessed by the attorneys. The appellee's attorney had prepared a typed written version of what he alleged was the hand-written Property Settlement Agreement signed by the parties and their attorneys. The appellant objected to the type-written version as not being the agreement. The trial court ordered that the hand-written Property Settlement Agreement be the one that was attached to the decree of divorce and incorporated therein.

 Upon a reading of the Property Agreement it is evident that the agreement is incomplete. The agreement refers to certain lists to determine what property the parties should each receive. However, the lists are not attached to the hand-written version of the agreement. Therefore, the agreement is ambiguous and it is not possible from a reading of the instrument at-

tached to the decree of divorce to determine what the property settlement is. Therefore, it is necessary for the matter to be remanded to the trial court and that the trial court (1) determine the marital estate of the parties and (2) make an equitable division thereof.

AFFIRMED IN PART; REVERSED IN PART; REMANDED WITH INSTRUCTIONS.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER, OPALA and KAUGER, JJ., concur.

HODGES and HARGRAVE, JJ., dissenting. We would affirm judgment of the trial court.

WILSON, J., disqualified.

---

10. *King v. King,* 138 Okl. 40, 280 P. 271 (1929); also see *Wesley v. Chandler,* 152 Okl. 22, 3 P.2d 720, 723 (1931). *First Restatement of Contracts,* § 603.