94 A.3d 947

BEVERLY MARSICO, PLAINTIFF, v.
LOUIS MARSICO, DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided July 24, 2013.

484

*Sylvia L. Breitowich* for plaintiff (*Weinberger Law Group,* attorneys).

*Abigale M. Stolfe* for defendant (*Stolfe & Ziegler,* attorneys).

L.R. JONES, J.S.C.

This case presents the novel question of whether a litigant may appear and testify in divorce proceedings through a designated power of attorney (POA). For the reasons set forth in this opinion, the court declines to authorize such a procedure in this matter.

## FACTUAL BACKGROUND

Plaintiff and defendant are octogenarians, ages eighty and eighty-four respectively. They wed in 1978 and remained married for thirty-five years thereafter. The parties have no children together. Defendant, however, has an adult daughter from a prior marriage, Laura Mertz.

In December 2012, defendant executed a POA appointing Mertz as his "true and lawful attorney-in-fact" over his affairs, and empowering her to conduct a vast array of financial actions on his behalf. Under the terms of the POA, defendant also granted Mertz authority "to institute, prosecute and defend any actions or proceedings brought in any court." Defendant further named Mertz's husband, Timothy Mertz, as his "alternate attorney-in-fact."

Less than three months later, plaintiff retained counsel and filed a complaint for divorce against defendant, seeking equitable distribution of assets acquired during the parties' marriage. In turn, defendant also retained counsel, who filed an answer and counterclaim for divorce on defendant's behalf, along with an accompanying certification pursuant to *Rule* 5:4–2. Defendant, however, did not sign the certification page personally. Instead, Mertz signed the certification page, in her newly appointed role as defendant's POA.

Upon receipt and review of the answer and certification, plaintiff's counsel objected to Mertz' signing of court papers and appearing on defendant's behalf in the divorce litigation, emphasizing that defendant had never been adjudicated as incompetent or otherwise unable to handle his own affairs. Plaintiff further contended that even if use of a POA was deemed permissible in divorce court, there was nonetheless a potential conflict of interest with Mertz serving as defendant's POA, since Mertz had a personal stake and interest in the litigation as defendant's adult child and potential heir to marital property otherwise subject to equitable distribution.

Conversely, defendant's counsel contended that there was nothing inappropriate about defendant's use of Mertz as a POA in the divorce litigation, in that (a) there was no court rule expressly prohibiting same, and (b) a person has a legal right to appoint a POA to handle legal affairs on his or her behalf.

Counsel for both parties stipulated that their respective research uncovered no prior New Jersey case law specifically addressing the issue of whether a matrimonial litigant may, or may not, appoint a third person as POA to appear on a principal's behalf in divorce litigation.

## LEGAL ANALYSIS

As an initial note, defendant's counsel is generally correct that a competent person has the right to appoint another person to act on his or her behalf as an "attorney-in fact" under a written POA. This right is embodied in New Jersey's "Revised Durable Power of Attorney Act", *N.J.S.A.* 46:2B–8.1. The POA is a written document signed by the person known as the "principal," authorizing another individual, known as the "attorney-in-fact" to "perform specified acts on behalf of the principal as the principal's agent." *N.J.S.A.* 46:2B–8.2(a).[1] Such specific acts may include conducting legal affairs on the principal's behalf, including but not limited to, retaining and communicating with a lawyer, and authorizing such lawyer to take legal action on behalf for the principal's benefit.[2]

---

[1] An "attorney-in-fact" is different from an "attorney-at-law" in that he or she does not have to be a lawyer. However, a non-lawyer cannot practice law without a law license, even as named "attorney-in-fact" in a written POA under *N.J.S.A.* 46:2B–8.2(a). *See Rule* 1:21–1(a) (unauthorized practice of law). *See also Committee on the Unauthorized Practice of Law*, Opinion 50 (March 12, 2013) (non-lawyer holding a power of attorney is not authorized to act as a lawyer licensed in the state of New Jersey.)

[2] *See N.J.S.A.* 46:2B–10, *Senate Labor, Industry & Professions Committee Statement to S. 2866* (Oct. 15, 1990) (regarding POAs in the context of financial transactions with banking institutions).

■   As regarding an appearing party's duty to render written certifications or oral testimony in a contested divorce proceeding, however, the statute does not expressly authorize one to delegate such duty to a third person. To the contrary, the court finds that a competent party cannot designate a surrogate, either through a purported POA or otherwise, to testify in his or her place without consent of the other party or court order.

Particularly in the realm of matrimonial and family court litigation, the entire fact-finding procedure is heavily dependent upon the testimony of the parties themselves, and involves a focus on otherwise private issues, dealings and communications between spouses within the family structure. Given the multiple layers of written and oral testimony which a divorce litigant may need to supply during the course of a case, a participating party cannot be permitted to sidestep his or her testimonial obligations by simply deputizing another person as POA to testify on his or her behalf. Such a process could allow a party who wishes to avoid disclosure of certain information, or personal cross-examination and judicial scrutiny of a relevant issue, to grant POA status to a third person who may have little or no direct personal knowledge of the information at the heart of the inquiry.

To be clear, the court makes no finding and draws no inference that the defendant in this specific case is intentionally attempting to frustrate the judicial process by avoiding direct testimony. Indeed, it is possible that defendant may have been trying to utilize the POA process as a matter of personal convenience due to age or health-related issues, although he supplies no evidence to date that he is infirm or otherwise unable to handle his affairs without the assistance of his daughter or any other third party. The issue with permitting a POA to appear for a party in this case, however, is not with the specific defendant, but rather, with the more general proposition of permitting *any* matrimonial litigant an unrestricted freedom and power to select a third person as POA to testify in his or her place in a divorce. Such power may potentially lead to serious misuse by parties who seek to

employ such a strategy for inappropriate and improper purposes that are obstructive to the fact finding process.

In a contested divorce, testimony from parties traditionally comes about in different forms during different stages of the proceedings. The first form usually occurs at the very start of the case, via written affidavits or certifications, which must accompany the initial pleadings, i.e., a party's affidavit of verification and non-collusion under *Rule* 5:4–2(c) an affidavit or certification of insurance coverage under *Rule* 5:4–2(f), and an affidavit or certification of notification of complementary dispute resolution under *Rule* 5:4–2(h). Thereafter, the case generally moves ahead to the discovery phase where parties must submit signed case information statements under *Rule* 5:5–2, answer written interrogatory questions under *Rule* 5:5–1(a), possibly undergo oral depositions under *Rule* 5:5–1(c), and when applicable, approve certifications affixed to motions under *Rule* 5:5–4. Finally, for divorce cases which cannot settle, there will be a trial and, in all likelihood, the need for courtroom testimony by each litigant followed by the opportunity for the other party to ask cross-examination questions. Further, even if a party elects not to take the stand as part of his or her own case, the adverse party can still call him or her as a witness in order to elicit information and evidence relevant to the issue of credibility. *See N.J.R.E.* 607; *Lerman v. Lerman,* 245 *N.J.Super.* 312, 313, 585 *A.2d* 425 (Ch.Div.1990) (party calling the other party as a witness may further request that court declare such party hostile per se).

If the court permits a POA to testify in place of a party based upon information purportedly supplied by the principal, there is a clear risk that such information will be incomplete or unreliable. Pursuant to *N.J.R.E.* 602, a witness generally may not testify on an issue unless the witness has personal knowledge of the matter. Further, testimony by the POA about what the principal was thinking or saying at a given time, when offered for the truth of the matter asserted on defendant's behalf, may constitute impermissible hearsay under *N.J.R.E.* 801(b), as an in-court statement

made by one other than the declarant, offered in evidence by the declarant for the truth of the matter asserted. Under the New Jersey Rules of Evidence, hearsay is generally inadmissible except as otherwise provided under the rules or at law. *N.J.R.E.* 802. *See also Murray v. Allstate Ins. Co.,* 209 *N.J.Super.* 163, 169, 507 *A.*2d 247 (App.Div.1986) (court may properly prohibit statements based upon facts not within witness's personal knowledge). Additionally, without cross-examination of the principal, there is a diminished opportunity for the court to gauge credibility by observing factors such as in-court demeanor, character, and other elements of human experience which, help the court gain a feel for the case. *See State v. Locurto,* 157 *N.J.* 463, 474–75, 724 *A.*2d 234 (1999).

The need for a party in divorce litigation to testify personally, rather than through a designated third person, exists not only at trial, but in motions and other pre-trial proceedings as well. Under *Rule* 1:6–6, affidavits and certifications in support of motions may only set forth facts which are admissible in evidence to which the affiant is competent to testify. Further, on motion return dates, the court may in its discretion direct oral testimony and require the affiant to submit to cross-examination. Such examination may be rendered ineffective, however, if a POA testifies for the principal about matters concerning the parties' marriage and dealings with each other that extend beyond the POA's own personal knowledge and experience. As family court litigation can be highly contentious, litigants must have the opportunity to obtain written and/or verbal testimony from the other party in order to engage in meaningful fact-finding and mutually accountable disclosure.

Of course, there may be circumstances when a party to a divorce action is mentally or physically unable to testify due to incompetency or other similar reasons. In such instances, the judicial process has been, and continues to be, flexible enough to accommodate fact-sensitive situations when reasonably necessary. For example, in *Kronberg v. Kronberg,* 263 *N.J.Super.* 632, 623

*A.*2d 806 (Ch.Div.1993), the court was confronted with a legal issue of first impression in New Jersey, as to whether adult children could file a divorce complaint and pursue divorce litigation on behalf of their mother against their stepfather. The court permitted such a process to occur, because (a) the mother had previously been declared incompetent following a judicial proceeding and court order in the surrogate's court, and (b) the mother's adult children, and not her husband, had already been appointed as the mother's legal guardians in the surrogate proceedings. *Id.* at 638–642, 623 *A.*2d 806.

There is a major difference, however, between *Kronberg* and the present case. In *Kronberg,* there had been already a prior judicial hearing and determination through the surrogate's court that the divorcing party was incompetent.[3]  Hence, the party was legally unavailable to testify as a competent witness in the divorce proceedings. Moreover, the court, rather than the party herself, appointed the adult children to serve as her legal guardians. Thus, the policy concerns raised in permitting a competent and available party to unilaterally appoint a POA in divorce proceedings did not exist in *Kronberg.*  To the contrary, *Kronberg* correctly and logically supported the legal concept that a court-appointed guardian had standing to file a complaint for divorce and/or appear for an incompetent party in a divorce proceeding. *See also Kingsdorf v. Kingsdorf,* 351 *N.J.Super.* 144, 152, 797 *A.*2d 206 (App.Div.2002), (guardian has standing to file complaint for divorce). *See also N.J.S.A.* 2A:34–14 (allowing guardian to prosecute or defend "an action respecting the marriage status . . . of his ward.")

■  Moving beyond the factual circumstances of *Kronberg,* there are occasionally cases where the evidence reflects that (a)

---

[3] An incompetency proceeding is a very specific and detailed fact-finding process in the surrogate's court. *See Rule* 4:86–1 (action to determine incapacity of a person and for appointment of guardian). The proceedings involve, among other requirements, affidavits of two physicians (*Rule* 4:86–2(b)) and court-appointed counsel for the alleged incompetent person (*Rule* 4:86–4(b)).

there has been no prior finding or judgment of incompetency against a party, and (b) the party can in certain respects, function independently, but (c) the party nonetheless may have significant mental health challenges which create a hardship for the party to fully grasp and understand the court proceedings and participate in a meaningful way. When the evidence reflects that such circumstances exist, the court may appoint a "guardian ad litem" ("GAL") to assist the party and support his or her best interests in the litigation. Pursuant to *Rule* 4:26(b), the court may appoint a GAL for an alleged mentally incapacitated person, whether upon petition by a friend on the party's behalf (*Rule* 4:26(b)(2)), or upon motion of a party (*Rule* 4:26(b)(3)), or upon the court's own motion (*Rule* 4:26(b)(4)). If the proposed GAL has a personal interest in the litigation, same must be disclosed, and depending upon the specific factual circumstances in the case, the court in its discretion may accept or reject such person as the proposed GAL. *R.* 4:26–2(b)(2).

Accordingly, in divorce litigation, if evidence exists that either party needs a GAL, application may be made accordingly. Further, if both parties have attorneys and if there is a joint agreement and stipulation through counsel that a GAL is appropriate for a party, a proposed consent order can be submitted to the court for review and consideration. Even in the case of a consent order, however, the proposed GAL must either have no personal interest in the case or, if there is such interest, same must be disclosed so that the court can make a determination whether to approve or not approve the proposed appointment.

In the present case, defendant has never been declared incompetent. While he may be an octogenarian, this factor cannot appropriately be the sole basis for a court to conclude that he is incapable of handling his own affairs, or that he is in need of a GAL at this time. While appreciating that it may at times be difficult for some litigants who are very advanced in age to personally appear in court or otherwise actively engage in litigation due to infirmity, disability, or other related reasons, a court

cannot and should not ever presume that just because a party is elderly, he or she is unable to appear in court, or read and understand legal papers, or otherwise function independently. *See State v. R.W.*, 104 *N.J.* 14, 21–22, 514 *A*.2d 1287 (1986) (improper to order a psychiatric examination based solely on age of witness.) To the contrary, there are many octogenarians, who are very physically and mentally healthy senior citizens and lead extraordinarily active lives.[4]

As noted, there has been no evidence supplied thus far regarding any illness, injury, or other restrictive forces which prohibit defendant from personally participating in these proceedings. In fact, the very document under which the POA asserts authority to now act on defendant's behalf was allegedly executed by defendant only months ago, a fact which weighs heavily against any argument of present incompetency.

Pursuant to *N.J.R.E.* 601, with certain limited exceptions, every person is competent to be a witness.[5] The declared policy of our law is that generally, all people are qualified to testify and give relevant evidence. *State v. G.C.*, 188 *N.J.* 118, 133, 902 *A*.2d 1174 (2006). Any claim of witness disqualification must be strictly construed against exclusion and in favor of the admission of relevant testimony which the witness might offer. The determination of whether a person is competent to be a witness lies within the discretion of the trial court. *State v. R.W.*,

---

[4] By way of prominent and recent example, New Jersey's own United States Senator, Frank Lautenberg, represented this state's interests on Capitol Hill for years as an octogenarian until passing away at the age of eighty-nine, just weeks before this decision.

[5] Every person is competent to be a witness unless (a) the judge finds that the proposed witness is incapable of expression concerning the matter so as to be understood by the judge and jury either directly or through interpretation, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth, or (c) except as otherwise provided by these rules or by law. *See N.J.R.E.* 601.

104 *N.J.* 14, 19, 514 *A.*2d 1287 (1986).[6]  Further, the failure of a party to produce a key and otherwise available witness may result in an adverse inference that the testimony would have been unfavorable.  *See State v. Clawans,* 38 *N.J.* 162, 170–71, 183 *A.*2d 77 (1962).

In this case, if evidence is ultimately presented reflecting that this defendant is mentally competent but physically unable to appear in court due to age or medically documented infirmity, there are alternative ways to secure defendant's oral testimony without using a POA as a substitute.  For example, arrangements can be made for a deposition, including a videotaped de bene esse deposition, which can be used in court if the litigant physically cannot appear at the courthouse for medical reasons.  The need for such a process, however, has not yet been established in this case.

Further, if evidence surfaces that defendant needs a GAL, then a motion can be filed for such relief or, if the parties or counsel so stipulate in a proposed consent order that a GAL would be appropriate under the circumstances, the court can consider such joint request as well.  If the proposed GAL is Mertz or her husband, the court will need to conduct a hearing on same, as the GAL may have an interest in the litigation, potentially giving rise to either a conflict or the appearance of a conflict warranting the appointment of another unrelated person.

In summary, while there are various ways of addressing issues and concerns, this court does not authorize the unilateral use of a POA procedure in the context of a third person testifying in place of an otherwise competent party.  As recognized by the Committee on the Unauthorized Practice of Law:

Powers of attorney often include provisions empowering the agent to "pursue claims and litigation."  This provision permits the agent to act on behalf of the

---

[6] In addition to court examination, a court may order a witness to undergo a medical or psychiatric examination to aid in determining competency.  *State v. Butler,* 27 *N.J.* 560, 600–01, 143 *A.*2d 530 (1958).

principal as the client in a lawsuit. An attorney-in-fact (the holder of a power of attorney) may make decisions concerning litigation for the principal, such as deciding to settle a case, but a non-lawyer attorney-in-fact may not act as lawyer to implement those decisions.... Nor may an agent appear on behalf of a principal in court as a pro se party; only the real party in interest—the principal, not a non-lawyer agent—is permitted to appear in court pro se. *R.* 1:21–1(a).

[*Committee on the Unauthorized Practice of Law,* Opinion 50 (March 12, 2013).]

In the present case, defendant's POA is not appearing pro se but with defendant's counsel. Nonetheless, for the foregoing reasons, there are significant concerns about a party utilizing a POA in a contested divorce. Accordingly, the court denies without prejudice defendant's request to appear in this proceeding by power of attorney through his adult daughter. Mertz is not judicially authorized to sign pleadings, affidavits or certifications, or otherwise testify in writing or verbally on defendant's behalf. Mertz may, however, testify as a witness in her own right on relevant matters within her personal knowledge, if called as a witness by either party.

If defendant wishes to proceed with his answer and counter-claim in the divorce, he must sign and file his pleadings and affidavits or certifications within twenty days pursuant to *Rules* 5:4–2(c), 5:4–2(f), and 5:4–2(h), and serve a copy on plaintiff's counsel. Otherwise, if either counsel contends that appointment of a GAL is necessary in this matter, further application may be filed in due course.[7]

---

[7] Subsequent to this decision, defendant personally appeared and participated in this litigation, which concluded by way of settlement.