IN RE MARRIAGE OF MAHONEY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE MARRIAGE OF MAHONEY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE MARRIAGE OF MAHONEY
2018 OK CIV APP 9
Case Number: 114926
Decided: 09/08/2017
Mandate Issued: 02/14/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 9, __ P.3d __

 

IN RE THE MARRIAGE OF MAHONEY:

JOHN M. MAHONEY, Petitioner,
and
THE ESTATE OF JOHN M. MAHONEY, Real Party in Interest/Appellee,
v.
CONNIE A. MAHONEY, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, JUDGE

AFFIRMED

Kevyn Gray Mattax, Oklahoma City, Oklahoma, for Petitioner/Appellee,

Kelsey Dulin, DULIN LAW FIRM, Edmond, Oklahoma, for Respondent/Appellant.

Kenneth L. Buettner, Chief Judge:

¶1 Respondent/Appellant Connie A. Mahoney (Wife) appeals from the trial court's order denying her motion to vacate a consent decree of dissolution. Wife sought to vacate the decree because it was signed by Petitioner John Mahoney's (Husband) sister, acting as his attorney in fact under a durable power of attorney, under allegedly fraudulent means. Husband died between the date of the consent decree and Wife's motion to vacate and Petitioner/Appellee The Estate of John Mahoney was substituted as the real party in interest. The trial court's findings that Husband was competent at the time the decree was executed and that the decree was not executed by fraud are supported by the weight of the evidence. The broad power of attorney form in this case gave Husband's attorney in fact power to enter contracts affecting property rights; more importantly, Husband directed his attorney in fact to sign the consent decree for him because his own signature was shaky. A consent decree of dissolution may be executed by an agent where such authority is not excluded by the terms of the power of attorney instrument. The trial court did not abuse its discretion in denying Wife's motion to vacate and we affirm.

¶2 The parties were married in 1960 and separated in January 2008. Husband filed his Petition for Dissolution of Marriage in November 2012. The parties entered a Journal Entry and Consent Decree of Dissolution of Marriage which was approved by the trial court and filed August 5, 2013. Wife filed her motion to vacate the consent decree September 3, 2013. Wife asserted that after it was filed, she discovered the decree had been signed by Kathleen Dunn as Husband's attorney in fact under a power of attorney and that Husband had died due to a brain tumor three weeks after the decree was filed. Wife argued the decree was obtained by fraud because Husband's counsel failed to disclose to Wife that Husband had a terminal illness affecting his brain and because Husband had failed to disclose one bank account during discovery. Wife also sought to vacate based on an irregularity in obtaining the judgment and unavoidable casualty or misfortune due to the decree being signed by Dunn rather than by Husband. Estate opposed the motion.

¶3 Hearing on Wife's motion to vacate was held in February 2016. The trial court issued its order denying the motion March 24, 2016. The trial court found that Estate met its burden of proving that Husband was competent at the time he expressly directed Dunn to execute the consent decree. In particular, the trial court found Husband first signed a signature page for the decree but due to physical shaking and not due to incapacity, Husband directed Dunn to also sign a signature page, which disclosed her status and which was attached to the filed decree. The trial court noted Husband's signature was shaky and Husband himself signed a beneficiary change on an annuity and his last will and testament after the decree was filed. The court found Husband had no duty to disclose his illness or that he had executed a power of attorney and therefore found no irregularity or fraud in the use of the power of attorney to execute the decree. Lastly, the trial court found that the fact that Dunn was designated as the beneficiary of Husband's estate was not a sufficient irregularity to set aside the decree because the evidence showed Husband desired that his sister, who was his primary caregiver during his last illness, receive his estate.[1]

¶4 We review a trial court's order on a motion to vacate for an abuse of discretion. Jones, Givens, Gotcher & Bogan, P.C. v. Berger, 2002 OK 31, ¶5, 46 P.3d 698. "Although a trial court is vested with wide discretion in denying a new trial, its order will be reversed if the trial court is deemed to have erred with respect to a pure, simple and unmixed question of law." Id., citing Bishop's Restaurants, Inc. of Tulsa v. Whomble, 1960 OK 44, 355 P.2d 560, 563, and Nash v. Hiller, 1963 OK 63, 380 P.2d 77, 80. Wife's claims on appeal are that a divorce is personal and may not be entered by an attorney in fact, that Husband lacked capacity to direct Dunn to execute the decree, and that Husband, Dunn, and Husband's counsel fraudulently concealed Husband's illness from Wife in order to obtain the consent decree.

¶5 We have reviewed the record and find it supports the trial court's findings of fact. As noted above, the parties separated at the beginning of 2008 and Husband filed his petition in late 2012. In April 2013, Husband discovered he had a brain tumor and he named Dunn as his attorney in fact in a broad durable power of attorney form executed April 29, 2013. Husband lived with Dunn until he entered a nursing home July 13, 2013.[2] Through counsel, the parties exchanged discovery and the case was set for trial September 13, 2013. Also through counsel, the parties exchanged offers and counter-offers to settle during summer 2013 and reached an agreement in late July. Husband's counsel prepared the consent decree and sent it to Wife's counsel. Wife and her counsel signed it and returned it to Husband's counsel. Dunn testified she took the document to Husband at the nursing home where he read it and signed it. Due to concern about his signature being shaky, Husband asked Dunn to sign the instrument on a new signature page. On the line above Husband's name, Dunn signed "John M. Mahoney by Kathleen S. Dunn POA". Husband's counsel took the decree, with attached signatures of Dunn as attorney in fact for Husband, Husband's counsel, Wife, and Wife's counsel, to the assigned judge who approved it for filing. The decree was file stamped August 5, 2013.

¶6 Wife and her counsel received the file-stamped copy August 16. Wife's counsel then sent an email to Husband's counsel, expressing surprise that Dunn had signed for Husband and asking for assurance that Husband would not try to use that fact to get out of the contract. In that email, Wife's counsel asserted Wife was not trying to get out of the decree. Husband died August 25, 2013. Only after learning of Husband's death did Wife seek to vacate the consent decree.

¶7 We first address Wife's claim that she was fraudulently induced to sign the consent decree. Wife cites testimony that Husband did not want Wife to know he was sick as proof of a conspiracy to trick her into settling. She contends she would not have agreed to settle if she had known Husband was dying and therefore contends Husband's illness was a material fact she had a right to know before agreeing to settle. Wife has not urged that she was induced to enter an inequitable settlement due to the failure to disclose Husband's illness. Wife has presented no authority that a party to a divorce proceeding has a duty to inform the other spouse of illness where the fact of illness is not relevant to the controversy. A spouse's health may be relevant for purposes of showing need for support alimony or determining the best interests for custody determinations, but neither of these questions was presented in this case. Wife has not suggested Husband's health was in controversy. Under the discovery code, to seek a medical examination of a party, the other party must show good cause and that the party's medical condition is "in controversy." 12 O.S.2011 §3235. Nor has Wife asserted she made a discovery request regarding Husband's health to which Husband answered falsely. Wife was represented by counsel and Wife agreed to settle the case rather than proceed to trial. Additionally, Wife has presented no authority that anyone had a duty to tell her, before she agreed to settle, that Husband had given Dunn a power of attorney or that Dunn would sign the consent decree under that power. There is no evidence of fraud in this case.

¶8 Wife also argues that Husband was not competent at the time the decree was executed and that it was fraud for Dunn to sign it as a result. Our review of the record shows the witnesses who actually observed Husband testified that he was competent at the time the parties settled. The trial court's finding that Husband was mentally competent at the time he directed Dunn to sign the decree is not against the weight of the evidence.

¶9 We next consider whether an attorney in fact, acting pursuant to a power of attorney, may execute a consent decree of dissolution.

A consent judgment is the agreement of the parties entered upon the record with the sanction of the court. . . . A consent decree in a divorce is the result of negotiations between the parties and subsequent settlement of the issues involved, which settlement is then presented to the court as a proposed judgment. Although it is not a judicial determination of the rights of the parties, it acquires the status of a judgment through the approval of the judge of the pre-existing agreement of the parties. . . . The law and public policy favor settlements and compromises, entered into fairly and in good faith between competent persons, as a discouragement to litigation. . . . If the agreement between the parties regarding support and maintenance is intended as final and binding, leaving nothing for determination by the court on the question of the amount of the allowance, such decree is not subject to modification without the consent of both parties. . . . Such an agreement between the parties is enforceable and valid even though it does what a trial court cannot do, provided the agreement does not contravene public policy. . . .

Whitehead v. Whitehead, 1999 OK 91, ¶¶9-10, 995 P.2d 1098 (footnotes and citations omitted). A power of attorney is "an instrument authorizing another to act as one's agent or attorney in fact (as distinguished from an attorney at law)." Matter of Rolater's Estate, 1975 OK CIV APP 60, 542 P.2d 219. Oklahoma has adopted the Uniform Durable Power of Attorney Act, codified at 58 O.S.2011 §§1071-1077. The instrument Husband executed in this case complied with the statutory requirements for creating a durable power of attorney under 58 O.S.2011 §1072. In addition to the testimony that Husband directed Dunn to sign the decree and that Husband later ratified that act by executing a will in which he declared he was unmarried, the Durable Power of Attorney form that Husband executed gave Dunn broad powers to contract without his direction and after any loss of capacity.[3] Nevertheless, Wife contends that divorce is a purely personal matter which can never be accomplished by an attorney in fact. Oklahoma cases have indeed referred to divorce as a personal matter, but none have expressly reached the question whether a broad power of attorney includes the power to sign a divorce settlement. See Pellow v. Pellow, 1985 OK 88, 714 P.2d 593 ("A cause of action for divorce is purely personal, and it has been held that such a cause of action terminates on the death of either spouse before the entry of a final decree.") and Scoufos v. Fuller, 1954 OK 363, 280 P.2d 720 ("The divorce decree severs the marital relation and requires a personal decision.") Wife also relies on the following language from a New York case addressing whether an attorney in fact has authority to amend an irrevocable trust:

Generally, the scope of a power of attorney is limited only by the boundaries of the principal-agency relationship . . . There are a few exceptions to the powers which can be granted to an attorney-in-fact. These exceptions include, but are not limited to: the execution of a principal's will . . . ; the execution of a principal's affidavit upon personal knowledge . . . ; or the entrance into a principal's marriage or divorce.

Matter of Perosi v. LiGreci, 98 A.D.3d 230, 948 N.Y.S.2d 629 (2012) (citations omitted). However, the case cited in Perosi as holding there is an exception for marriage and divorce, Mallory v. Mallory, 113 Misc.2d 912, 450 N.Y.S.2d 272 (1982), indicates its statement that an agent may not obtain a divorce for her principal was based on the very unusual facts of that case. In Borghol v. Borghol, 2014 WL 10920357 (Super. Ct. PA, not reported in A.3d), the court held a wife could not collaterally attack a divorce settlement where she had given an attorney a power of attorney to appear for her in a foreign court.

¶10 In Scoufos, supra, the Oklahoma Supreme Court found that where a person filed a divorce petition and later suffered a head injury necessitating the appointment of a guardian, the guardian could proceed in the case and obtain a valid divorce for the ward, so long as the ward was incompetent but not insane. The court found that an incompetent person, though unable to manage his financial affairs, could still form the intent to divorce, while an insane person could not make the personal decision to divorce. Implicit in this holding is the recognition that while divorce is indeed a personal decision, the facts of a particular case may necessitate a guardian's or agent's participation. This reality is such that it may not even warrant analysis where it is not challenged. For example, in French v. French, 1947 OK 14, 198 Okla. 135, 176 P.2d 807, the Oklahoma Supreme Court mentioned in its statement of facts that the husband's mother instituted the divorce proceeding, acting "under power of attorney for that purpose executed and acknowledged by plaintiff before a Judge Advocate in the Southwest Pacific area" during World War II. The decision made no further mention of the power of attorney; clearly that fact was not relevant to the decision. Similarly, in an unpublished decision of the Texas Court of Appeals, the wife's son initiated divorce proceeding under power of attorney, the case proceeded to trial and appeal, but the issue of power of attorney was not raised. See Gilbreath v. Gilbreath, 2004 WL 2066243 (not reported in S.W.3d). In another Texas Court of Appeals case, with facts similar to this one, the appellate court expressed no concern that Husband's attorney in fact appeared at a mediation and negotiated a divorce settlement on behalf of his principal. In re Marriage of Fannette, 2013 WL 3533238 (not reported in S.W.3d). We also note cases from New York approving of one spouse giving a power of attorney to the other spouse for the specific purpose of obtaining a divorce in another jurisdiction. The issue in those cases was whether the power itself was fraudulently obtained, not whether a person holding a valid power of attorney could agree to a divorce for the principal. See Kantrowitz v. Kantrowitz, 21 A.D.2d 654, 249 N.Y.S.2d 723 (1964); Kurman v. Kurman, 11 Misc.2d 1035, 174 N.Y.S.2d 128 (1958).

¶11 We recognize that some states have reached the opposite conclusion. The New Jersey Superior Court has recently held that a competent person may not authorize a power of attorney to certify an answer to a divorce petition. Marsico v. Marsico, 436 N.J.Super. 483, 94 A.3d 947 (2013). In Marsico, the court found that a competent person must appear and testify, rather than relying on a power of attorney, despite advanced age. The court noted that in that state a guardian has authority to initiate a divorce proceeding for a ward, thus emphasizing the court's view that a finding of incompetency was necessary before a party other than the spouse could appear in a divorce case. The South Carolina Court of Appeals has signaled its approval of the view that an action for separate maintenance may be brought by an attorney in fact in contrast to an action for divorce, which is personal to the parties to the marriage. See Brewington v. Brewington, 280 S.C. 502, 313 S.E.2d 53 (1984). These cases are factually distinguishable from the circumstance here, where Husband filed the petition for divorce before he became ill and executed the power of attorney and where Dunn's only participation was signing the negotiated consent decree at Husband's direction and after Husband himself had attempted to sign it.

¶12 In this case, the record showed Husband believed he was unable to legibly sign the consent decree and directed his agent to sign for him. We fail to see how this circumstance differs from a spouse who is unable to sign due to being physically located in another state. We find no irregularity or fraud in obtaining the consent decree here and we therefore find no abuse of discretion in the trial court's denial of Wife's motion to vacate the consent decree. AFFIRMED.

MITCHELL, P.J., and SWINTON, J., concur.

FOOTNOTES

[1] As to Wife's complaint that Husband failed to disclose a certain account, the trial court found both parties were represented by counsel and both parties had claimed there were outstanding discovery issues at the time they agreed to settle. Wife has not challenged this finding in her appellate brief.

[2] Although Wife contends Dunn put Husband in the nursing home without notice to him, the testimony showed Husband's daughter took him to the nursing home while Dunn was at a hotel.

[3] Among other powers, the Durable Power of Attorney authorized Dunn to appear for Husband in litigation and to sign contracts or instruments related to property. It is important to note that Husband did not claim, nor does his Estate claim, that Dunn was without authority to sign the decree as Husband's agent. Rather, the other party to the contract seeks to avoid her own agreement by challenging the authority of the other party's agent.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1975 OK CIV APP 60, 542 P.2d 219, ESTATE OF ROLATER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1947 OK 14, 176 P.2d 807, 198 Okla. 135, FRENCH v. FRENCH
Discussed at Length
 1954 OK 363, 280 P.2d 720, SCOUFOS v. FULLER
Discussed
 1960 OK 44, 355 P.2d 560, BISHOP'S RESTAURANTS, INC. OF TULSA v. WHOMBLE
Discussed
 1963 OK 63, 380 P.2d 77, NASH v. HILLER
Discussed
 2002 OK 31, 46 P.3d 698, JONES, GIVENS, GOTCHER & BOGAN, P.C. v. BERGER
Discussed
 1999 OK 91, 995 P.2d 1098, 70 OBJ 3444, Whitehead v. Whitehead
Discussed
 1985 OK 88, 714 P.2d 593, 56 OBJ 2465, Pellow v. Pellow
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 3235, 12 O.S. 3235, Physical and Mental Examination of Persons
Cited
Title 58. Probate Procedure
 Cite
Name
Level

 58 O.S. 1072, Durable Power of Attorney Defined
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA