777 A.2d 68 (2001)
342 N.J. Super. 457
In the Matter of the CONSERVATORSHIP OF William C. HALLEY.
John HALLEY, Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 2001.
Decided May 7, 2001.
*69 Robert J. Lecky, New Brunswick, argued the cause, for appellant.
Patricia A. Bennett, argued the cause, for respondent.
Before Judges STERN, RODRIGUEZ and FALL.
The opinion of the court was delivered by STERN, P.J.A.D.
This is an appeal from portions of an "order appointing conservator," entered on February 10, 2000. The order denied the motion of John and Rose Halley for reconsideration of the previous denial of their motion to intervene in this action seeking the appointment, "or [for] any other relief." Appellant John Halley, the nephew of the conservatee,[1] William C. Halley, does not appeal from provisions of the same order which, among other things, appoints Patricia A. Bennett, Esq., as conservator of the property of William C. Halley, discharges John G. Hoyle III, the court-appointed attorney for the conservatee, and awards fees to both Hoyle and Bennett. The order also requires Bennett to file periodic accountings and to post a bond in the amount of $650,000.
On this appeal John Halley (hereinafter "John") argues that "the trial court inappropriately excluded [him] from participating in the conservatorship application" and that "the trial court erred by failing to award [him] counsel fees ..." He contends that the governing statute, N.J.S.A. 3B:13A-1 to -36, does not intend to exclude close relatives from participation in the conservatorship proceedings, and that "[b]y excluding [him] from his uncle's conservatorship application, the lower court discouraged what it ought to have encouraged: participation by loving and concerned family." John asserts:
The trial court erred by refusing to permit [him] to participate in his uncle's conservatorship proceeding. The conservatorship statute does not prevent him from taking part, and his participation would further the protective goals of the legislation.
We affirm the judgment substantially for the reasons expressed by Judge Clarkson S. Fisher, Jr., in his letter opinion of January 14, 2000 and his oral findings of February 10, 2000. We add the following.
Pursuant to N.J.S.A. 3B:13A-3, Judge Fisher appointed counsel for the conservatee who filed a comprehensive report of findings and recommendations concerning the complaint for appointment of a conservator.
*70 The complaint was verified by William C. Halley (hereinafter "Halley"). In preparing his findings and recommendations, the court-appointed attorney, John G. Hoyle III, Esq., interviewed Halley; Patricia A. Bennett, Esq., Halley's attorney in fact and proposed conservator; the "plaintiffs"; Dr. Putnam Brodsky, the conservatee's treating physician for ten years; Robert Obrzut, a social worker from Adult Protective Services; Diane Whalen, "a former health care aide for Mr. Halley" who had filed a complaint with Obrzut's agency because of a concern that "Ms. Bennett and her staff were taking advantage of Halley financially"; and representatives of Fleet Bank and H & R Block. The courtappointed attorney also indicated that he discussed the matter with the attorney for the plaintiffs and reviewed the conservatee's financial records, the records of Adult Protective Services and various other documents. There is no attack, nor reason to suggest a basis for an attack, on the independence of the court-appointed attorney or any relationship he might have with the conservator.
The court-appointed attorney reported that Halley, then ninety-two years old, was in an automobile accident in October 1998, as a result of which he spent "approximately one month in the hospital recovering from some internal injuries." Upon his release, Halley requested Bennett "to act as his attorney-in-fact pursuant to a Power of Attorney he had given her on December 13, 1993." The court-appointed attorney interviewed Halley together with Obrzut who had been investigating the complaint filed by Whalen, the former health care aide for Mr. Halley. In his February 7, 2000 report and recommendation, attorney Hoyle described the following:
Mr. Halley is an engaging gentleman who freely talked about his situation to us. Mr. Halley is a proud veteran of World War II and spoke highly of his six years in the military. Although confused at times, Mr. Halley presented himself as an intelligent man who is content with his present circumstances and fully aware of the limitations brought upon by his advanced age....
Robert Obrzut, LSW, administered the Mini-Mental Status Examination to Mr. Halley, who was able to answer the questions and perform the tasks required without much difficulty.
Mr. Halley expressed concern that he be allowed to spend his money as he sees fiteven if it means buying the aides gifts and taking many vacations during the year. He explained that his monthly living expenses are very conservative, as his condominium is paid off and he lives modestly, and stated that he has substantial assets. When asked how much he pays the home health care aides, Mr. Halley candidly admitted that he was unsure but that Patricia Bennett was handling their pay.
Mr. Halley appeared to understand the significance of the Conservatorship action that was initiated by him. He equated it to "a process where the Court approves that Patricia Bennett should act as his Power of Attorney."
The court-appointed attorney also reported:
Mr. Halley stated that he wants to be able to communicate with John and Rose Halley and feels that at times his staff of aides prevent him from doing so. In fact, Mr. Halley indicated that it is his desire to travel to Nova Scotia and Newfoundland to visit friends and to see the Halleys. When asked about the many vacations that Iris Ippolito takes him onSouth Carolina, Long Beach Island, Orlando and Daytona, to name a few Mr. Halley reported that he really has *71 no desire to go to these places, but that once he is there he has a good time. Mr. Halley stated that he agrees to travel to these destinations with Iris Ippolito and other aides to "make the girls happy because they enjoy the warm weather and they deserve to go since they take good care of me." Mr. Halley added that it is his belief that if he proves to Patricia Bennett and Iris Ippolito that he can travel, without incident, to these destinations, that they will allow him to resume his twice yearly trips to Nova Scotia and Newfoundland. The Court should be aware that throughout our conversation, Mr. Halley repeated[ly] spoke about the good times he has "up North." The Court should be further aware that during the two months that this action has been pending, Mr. Halley returned from a trip to South Carolina and a separate trip to Florida, where he spent some time at Disneyworld and on a cruise. Further, upon information and belief, Iris Ippolito and Patricia Bennett have booked another trip for Mr. Halley to Daytona Beach, Florida, for the end of February [2000]. When asked as to who pays for these trips, Mr. Halley reports that he insists that he does.
The court-appointed attorney further reported that Halley "desire[s] to remain at his condominium for the rest of his life with the continued support of the aides" and "that he trusts Patricia Bennett's judgment and wants her to continue to manage his finances and tend to his care." Halley was aware of the amount of his assets and of its management. In addition, according to Mr. Hoyle's report, Dr. Brodsky felt that, although Halley was sometimes "forgetful" and "confused," these symptoms were "normal for a man of his advanced age" and that he "is able to make decisions with respect to all aspects of his life, including his care and housing, but that he requires assistance with managing his financial affairs." According to the report, "Dr. Brodsky opines that Mr. Halley is not mentally incapacitated and is not in need of a Guardian, but that he does require someone to manage his monetary affairs and make arrangements for his care." Dr Brodsky further "reported that he discussed the Conservatorship application with Mr. Halley[] and inquired into his relationship with John and Rose Halley. According to Dr. Brodsky, Mr. Halley advised that he was concerned that John and Rose Halley may be after his money." Mr. Hoyle further noted that:
Dr. Brodsky is concerned that the amount of travel in recent months could have a negative impact on [Halley's] health and stressed that whomever is appointed Conservator must use their best judgment to ensure that these trips are in Mr. Halley's best interest and that they are to destinations that Mr. Halley may benefit from.
The report also gave the background with respect to how Halley retained the legal services of Ms. Bennett, who had handled his legal matters for over seven years after he was referred to her by the bank where Halley had assets on deposit. Ms. Bennett indicated that she employed home health care aides on a twenty-four hour basis and that some inappropriate conduct had resulted in "prompt termination." Finally, the court-appointed attorney reported:
In conclusion, based upon my interactions with Mr. Halley, my discussions with Patricia Bennett, Esq., my discussions with John and Rose Halley, my discussion with Dr. Brodsky and a review of all pleadings and correspondence to date, it is my opinion that Mr. Halley is in need of a conservator as he is unable to manage his property and affairs because of his age and physical limitations. It is my recommendation, *72 and Mr. Halley's desire, that his attorney-in-fact, Patricia Bennett, be duly appointed as conservator of Mr. Halley.
Ms. Bennett, if appointed as the fiduciary of Mr. Halley, should be required to post an appropriate bond.
Further, I respectfully request that Ms. Bennett provide the Court with a formal accounting of Mr. Halley's assets from November 1998 through the present within a reasonable time.
Also, I respectfully request that any Judgment entered in this matter contain a provision that John and Rose Halley shall have access to Mr. Halley, so long as Mr. Halley may desire, and that Patricia Bennett or any aides hired by her shall not interfere with such visitation or phone calls by the Halleys.
Further, I would respectfully request that Patricia Bennett make arrangements for Mr. Halley to be examined by Dr. Brodsky prior to any trip out of state so that Dr. Brodsky may assess Mr. Halley's fitness for such excursion and provide his recommendation.
[Emphasis added.]
Based on this report and recommendation, we find substantial evidence in the record to support Judge Fisher's conclusion. N.J.S.A. 3B:13A-2 permits the appointment of a conservator "except that if the conservatee objects to the imposition of a conservatorship, a conservator shall not be appointed." In the court's discretion or, if the proposed conservatee is not able to attend the hearing with regard to the appointment, the court "shall" appoint counsel to conduct an investigation concerning the appointment, including the position of the proposed conservatee. See N.J.S.A. 3B:13A-3, -4. It is clear that a conservatorship cannot be commenced without the consent of the proposed conservatee and in this case the conservatee, after investigation by an independent court-appointed attorney, indicated his consent. It is equally clear that because of the competency and consent of the conservatee, the conservatorship may be designed to prevent other family members from learning about and endeavoring to take control of assets of the conservatee.
We recognize that N.J.S.A. 3B:13A-6 requires notice to be served upon certain relatives of the conservatee including, in a case like this, "the person or persons closest in degree of kinship to the conservatee." According to the statute, such a person "may, upon approval of the court and in the interest of the conservatee, appear and be heard concerning all matters relating to the conservatorship." N.J.S.A. 3B:13A-7.[2] In this case Judge Fisher allowed John, Halley's nephew, and Rose, John's wife, to "appear and be heard,"[3] but did not permit them to obtain discovery of the documents they sought by subpoena or to participate further in the matter. To have permitted them to participate further in the conservatorship proceedings would have permitted them to have access to the very documents that the competent conservatee did not want them *73 to have access to or knowledge of. As Judge Fisher noted, this was Halley's right.[4]
Judge Fisher designated Ms. Bennett, the person "designated by the conservatee," to act as conservator. He followed the statutory preference in this regard, see N.J.S.A. 3B:13A-8, and we affirm the judgment in all respects. See also N.J.S.A. 3B:13A-19.
On February 10, 2000, after denying John and Rose's application for reconsideration of the January 14, 2000 decision denying enforcement of their subpoenas, Halley was interviewed in the presence of Judge Fisher.[5] He responded to all questions articulately describing his background and assets, and stated that he wanted Ms. Bennett to act as conservator. Halley explained the impact of his 1998 accident and the hospitalization and that there were aspects that he could not remember, but said that Bennett "took care of" his affairs while he was in the hospital and that she has been "taking care of them very, very well ever since." Also on February 10, 2000, the court-appointed attorney orally repeated his recommendations and noted that Halley still wanted to talk and see the appellant and his wife, but that "he just doesn't think that they should be involved in his financial affairs." At the end of the proceedings, Judge Fisher found that when Halley "expressed his consent to the appointment of [a] conservator that he did so freely and voluntarily."
The in-court proceedings of February 10, 2000 clearly support the judge's decision to deny enforcement of the subpoenas issued by the attorney for John and Rose Halley and their further participation, as detailed in the judge's letter opinion of January 14, 2000 as well as the judgment of February 10, 2000.
Finally, we note that accountings will be necessary to preserve the estate of the conservatee. See N.J.S.A. 3B:13A-25, -26, -27. N.J.S.A. 3B:13A-27 expressly provides that the annual accounting shall be "available for inspection by any party set forth in N.J.S.A. 3B:13A-6." While John Halley is not the person "closest in degree of kinship to the conservatee," N.J.S.A. 3B:13A-6, -27, we do not pass upon whether he would be entitled to such inspection and the right to challenge the conservator's conduct, as fiduciary, see N.J.S.A. 3B:13A-30 to -32, if he presents the Chancery Division with proof, under Canadian law, of his representation or legal responsibility *74 for his father, who he seeks to represent in this proceeding.[6]
Affirmed.
NOTES
[1] John's wife, Rose, is sometimes referred to as an appellant because she also challenged the conservatorship and moved for reconsideration. Actually, the contest was filed by Robert J. Lecky, Esq., as "Attorney for the Family of William C. Halley." For some reason, Mr. Lecky is listed as the appellant in the notice of appeal. Appellant's brief refers only to John Halley as the appellant.
[2] John certified that his father, who is entitled to notice, "is in a Veteran's Nursing Home in Halifax, Nova Scotia [and] was declared mentally incompetent 16 years ago." John asserts he had the right to appear on his father's behalf.
[3] Mr. Lecky interviewed Halley on November 29, 1998. He wrote to Judge Fisher and asserted both that the conservatorship was commenced in light of his inquiries on behalf of the family and that he was "concerned about the well being of ... Halley and [his] money" and that "[t]he Accounting in the Complaint [did] not show" certain assets that John and Rose believed to exist. Affidavits were subsequently filed by John and others in support of the concerns for Halley's well being and misuse of his assets.
[4] John acknowledged that Halley was competent to seek the appointment of a conservator but believes that "a concerned family member who knew [Halley] for many years" or "someone who has a long history with the conservatee" would be better equipped to "conduct an investigation and prepare a report," or that the court should have "the benefit" of reports from him and the court-appointed attorney. John also seeks counsel fees. However, at argument before us, John indicated that he does not oppose the appointment of a conservator or of Bennett as the conservator. Moreover, as John does not suggest that Halley is incompetent or in need of a guardian, we agree with Judge Fisher's suggestion that the dispute really relates to discovery and access to Halley's financial information, as opposed to his day-to-day care.
[5] While the transcript was dated March 10, 2000, the certification of the transcriber makes it appear as if the hearing was held on February 10, 2000, which would seem consistent with entry of the judgment that day. It would also be consistent with material contained in the notice of appeal, although the notice of appeal refers to "no verbatim record." In any event, if the hearing occurred on February 10, 2000, as it appears to have been, it is part of the record supporting the judgment entered that day. If it occurred subsequently, it still supports the judgment under review.
[6] Particularly, in the absence of some proof of legal representation by John of his father, Judge Fisher was correct not to let him stand in his father's shoes.