**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5674-18T1

ANTOINETTE TAYLOR, On
Behalf of MAURICE HAGAN,

     Plaintiff-Appellant,

v.

CARRIE E. REED,

     Defendant-Respondent.

_____

     Argued October 13, 2020 – Decided October 28, 2020

     Before Judges Rothstadt and Mayer.

     On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000115-18.

     Luretha M. Stribling argued the cause for appellant.

     Deborah E. Winston argued the cause for respondent.

PER CURIAM

     Plaintiff Antoinette Taylor filed this action on behalf of her father, Maurice Hagan, in response to defendant Carrie Reed's removal of plaintiff from

Hagan's business where Taylor had been working for many years. Defendant is Hagan's significant other with whom he has lived since at least 2008. Plaintiff now appeals from a July 26, 2019 order granting summary judgment to defendant and dismissing the complaint. Plaintiff's complaint sought an order directing defendant to turn over possession and control of Hagan's business to plaintiff and challenged the authenticity of a power of attorney allegedly given by Hagan to defendant.

The Chancery judge granted defendant's motion after determining that plaintiff lacked standing to file and pursue this action on behalf of her father, who, despite his health issues, was never declared incompetent or incapacitated, nor did he authorize plaintiff to act on his behalf. On appeal, as to the standing issue, plaintiff argues summary judgment was improperly granted because she was authorized to act for her father as his agent.[1] We affirm as we too conclude that plaintiff did not have standing to sue on her father's behalf, substantially for the reasons stated by the Chancery judge in her oral decision that was placed on the record prior to the entry of the challenged order.

---

[1] Plaintiff asserted other contentions that addressed other issues such as the authenticity of defendant's power of attorney, spoliation of the original power of attorney, and the judge's failure to take action in response to plaintiff's letter about problems she had in securing two hospitals' compliance with subpoenas for the production of documents.

A-5674-18T1

As the present appeal requires that we review a decision on summary judgment, we derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiff as the party who opposed entry of summary judgment. Edan Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

Hagan owns the Coachman's N, which is a tavern in Newark, and he is the president of E.C.L.C., Inc., a related company that holds the liquor license for the tavern. Neither plaintiff nor defendant owns any interest in either entity.[2]

By 2012, plaintiff, who had worked at the tavern for many years, assisted her father in its management. In July 2014, Hagan was hospitalized because of cardiac issues. As a result of her father's hospitalization, plaintiff became responsible for paying the tavern's employees, as well as staffing for the tavern, making annual payments to maintain the liquor license, and paying various bills, including the tax bill. She continued to perform many if not all of those functions even after her father's discharge from the hospital.

---

[2] However, in her counterclaim, which was ultimately dismissed voluntarily, defendant alleged she was a part owner and officer in Hagan's businesses. She also alleged that she and Hagan lived together for approximately forty years.

In 2016, Hagan was hospitalized again after falling and striking his head. According to plaintiff, during his stay at the hospital, Hagan was placed on a ventilator and later transferred to another long-term care facility. He was transferred again to a nursing home until he was released on March 23, 2017. Plaintiff visited him in the nursing home and described Hagan as confused and unable to speak clearly. While there, a psychologist reported on January 31, 2017, that Hagan was referred for an evaluation due to a history of "depression, dementia, [and] talking ability" but that "cognitive deficits preclude[d] successful psychotherapy," and an assessment of Hagan's cognitive abilities, completed on March 4, 2017, indicated he had difficulty repeating three words in a row, and he neither knew the year nor the date.

Following his release from the nursing home, Hagan returned to his home with defendant, who thereafter transported Hagan once a month to the tavern so he could check on the business and pick up money.[3] According to plaintiff, Hagan expected her to continue managing the tavern.

---

[3] According to defendant it was during this time period in 2017 that Hagan transferred to her an interest in his business and signed a durable power of attorney.

Unfortunately, on January 11, 2018, Hagan suffered a stroke. The stroke caused Hagan to be wheelchair bound and to suffer from limited speech and cognitive abilities, which, according to plaintiff, other than being wheelchair bound, Hagan was already experiencing in 2017. Upon discharge from the hospital, Reed cared for him at their home.

On January 26, 2018, defendant appeared at the tavern along with two Alcoholic Beverage Control Commission (ABC) officers and demanded that plaintiff vacate the premises, citing a power of attorney that Hagan had purportedly signed on March 1, 2017. Plaintiff, however, was never presented with the document allegedly signed by her father.[4] Nevertheless, plaintiff left the premises.

Approximately five months later, plaintiff filed her complaint on behalf of her father.[5] In her complaint, plaintiff sought relief on behalf of her father and the tavern's holding company. She specifically demanded that:

> [Defendant] . . . provide[:] all keys to the tavern, all receipts that she has collected since the date of January 28, 2018 when [she] entered the tavern and proclaimed

---

[4] During discovery, defendant presented a copy of the power of attorney that Hagan allegedly signed. Plaintiff's handwriting expert determined that the power of attorney was not genuine.

[5] In her answer to interrogatories, plaintiff stated that her legal authority for filing this action was that she was Hagan's daughter "and his next of kin."

A-5674-18T1

herself to be in possession of a Power of Attorney and now the new manager and owner of the tavern[;] . . . the original Power of Attorney and explain the circumstances of how she obtained this Power of Attorney. [She] must also explain to the Court how it was that she represented herself as the owner of the building, . . . and advised [plaintiff] that she needed to sign a lease as [defendant] did not own[the building]. It is [also] requested that the Court find that [defendant] has no ownership interest in the Coachman's N, no right to ownership of the liquor license and no right to the management of Coachman's N. It is requested that the Court eject [defendant] from the Coachman's N. and quiet title in [plaintiff] for the benefit of Hagan. The Court must also require the [liquor] license to the tavern be in the name of ECLC Inc. and further that the liquor license be amended and placed in Hagan's name only. It is further requested that the Court order that [defendant] be ordered to pay all Counsel Fees and costs incurred as a result of having to bring this action. Finally it is requested that the Court Order and address any and all other matters which the Court deems necessary and proper in settlement of the issues in this case.

Defendant later filed an answer and counterclaim demanding that plaintiff produce Hagan's business's mail, provide an accounting of the income realized while plaintiff was managing the tavern, and its tax returns. Plaintiff filed a responsive pleading, essentially denying defendant's allegations of having an interest in Hagan's business and defendant's entitlement to any relief.

Thereafter, the parties exchanged discovery demands and issues arose with their providing adequate responses. Motions were filed to address their

issues and as to one motion, on February 20, 2019, the Chancery judge entered an order denying defendant's motion to compel discovery, but nonetheless stated "[t]o the extent that [plaintiff] has not responded to discovery served by [defendant she was] barred from offering any evidence, witnesses, [or] arguments at trial which she has failed to produce through discovery. Plaintiff shall not be permitted to benefit from her failure to comply with discovery deadlines in the [c]ase [m]anagement [o]rder."

At a subsequent case management conference held on March 18, 2019, the judge ordered that expert reports were to be served by May 31, 2019. Plaintiff did not serve any expert reports relating to Hagan's mental or physical health.[6] She did write to the judge, without ever filing any motions for enforcement, complaining that two hospitals were not responding to subpoenas she had served.

Defendant filed for summary judgment in June 2019. Plaintiff opposed the motion. On July 26, 2019, after considering the parties' written submissions and oral arguments, the Chancery judge granted defendant's motion after placing her decision on the record that day.

---

[6] On July 17, 2019, Taylor submitted her handwriting expert's report, analyzing the authenticity of a power of attorney that Hagan allegedly signed in favor of defendant.

A-5674-18T1

The judge found that Hagan and defendant had lived together since at least 2008, Hagan had a stroke in 2018, and plaintiff never had a power of attorney from Hagan. The judge also found that plaintiff was not Hagan's guardian and she never had any ownership interest in Hagan's businesses. Moreover, the judge found that plaintiff never produced an expert to address Hagan's mental capacity.

In granting defendant's motion, the judge stated she had "no knowledge of any legal support for the right of an individual to bring a lawsuit on behalf of another individual without a legal appointment to do so, either through the [c]ourt or some written documentation." The judge rejected plaintiff's primary argument, that her actions on behalf of her father gave her apparent or actual authority to file a lawsuit on his behalf.

Addressing plaintiff's contention that she acted as her father's agent, the judge stated the following:

> The plaintiff has argued that she has the right to bring this lawsuit on behalf of her father, Maurice Hagan, because of an apparent or actual agency given to her by her father. Indeed, it appears that [plaintiff] did manage the Coachman's N, the tavern in which her father apparently has an interest.
>
> And, . . . for purposes of [s]ummary [j]udgment, the [c]ourt accepts that [plaintiff] acted on her father's behalf on personal business issues, that she had contact

8

A-5674-18T1

with his accountant, that she engaged with the insurance company representatives on behalf of her father.

And, there were other areas where the plaintiff alleges she was acting on behalf of her father and with her father's authority. The [c]ourt accepts that for purposes of this motion. However, the Court does not find that that gives [plaintiff] the right to bring a lawsuit on his behalf, specifically this lawsuit on his behalf.

The judge stated these actions did not give plaintiff the right to bring this lawsuit on his behalf because "[h]e's not been deemed incapacitated. [Plaintiff] has not been appointed as his guardian. She's not his guardian ad litem. In fact, there is no guardian or guardian ad litem, or anybody legally appointed to act on behalf of Mr. Hagan for purposes of bringing a lawsuit on his behalf."

The judge again stated that plaintiff never produced an expert to opine that Hagan was incapacitated. Despite plaintiff's argument that medical records indicated that Hagan might not have been well, those records did not "give the [c]ourt enough to find that he was incapacitated for purposes of having a lawsuit filed on his behalf."

As to the power of attorney given to defendant, which plaintiff argued was fraudulent, the judge stated:

For purposes of this motion for summary judgment, to dismiss [plaintiff's] complaint, the [c]ourt does not find that the power of attorney is relevant. The power of

9

attorney would be relevant if somebody is attempting to rely on it, in this case, [defendant], for her own legal purposes.

But, the [c]ourt finds that the power of attorney would not be relevant to the motion to dismiss or the motion for summary judgment brought by [defendant]. Certainly, [plaintiff] may and likely will raise that issue in regard to the counter-claim, which was filed by [defendant].

After the judge finished placing her reasons on the record, defendant advised the judge that defendant was voluntarily dismissing her counterclaim. The judge then entered an order granting defendant summary judgment and dismissing the complaint and the counterclaim. This appeal followed.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

Standing is a question of law we review de novo. Courier-Post Newspaper v. Cty. of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010); In re Project

Authorization Under N.J. Register of Historic Places Act, 408 N.J. Super. 540, 555 (2010). The "traditional criteria" for assessing standing are "whether the party has a sufficient stake in and real adverseness with respect to the subject matter, and whether the party will be harmed by an unfavorable decision." In re Grant of Charter Sch. Application of Englewood, 320 N.J. Super. 174, 222 (App. Div. 1999), aff'd as mod. on other grounds, 164 N.J. 316 (2000). Litigants generally do not have standing "to assert the rights of third parties." Stubaus v. Whitman, 339 N.J. Super. 38, 48 (2002).

Here, plaintiff has filed a complaint on behalf of her father, but it is undisputed he had not made her his attorney in fact under a power of attorney, see N.J.S.A. 46:2B-1 to -19, that could have allowed her to handle her father's "legal affairs . . . including but not limited to, retaining and communicating with a lawyer, and authorizing such lawyer to take legal action on [his] behalf." Marsico v. Marsico, 436 N.J. Super. 483, 488 (Ch. Div. 2013). Further, Hagan has not been declared incompetent, no action was ever filed seeking the

appointment of a guardian for him,[7] and no guardian ad litem was appointed.[8]

See R. 4:26-2; R. 4:86-4(d) (addressing appointment of a guardian ad litem); R. 4:86-1 to –10 (addressing guardianship actions); N.J.S.A. 3B:13A-1 to –36; R. 4:86-11; In re Conservatorship of Halley, 342 N.J. Super. 457, 462–65 (App. Div. 2001) (addressing conservatorships). Under these circumstances, where plaintiff might benefit from the outcome of the litigation by being placed in control of her father's business, there is no evidence that filing this lawsuit conformed to his wishes or, assuming he was incapacitated, it was in his best

---

[7] A proceeding under Rule 4:86-1 "to determine incapacity of a person and for appointment of guardian" "is a very specific and detailed fact-finding process in the surrogate's court . . . . involv[ing], among other requirements, affidavits of two physicians (Rule 4:86-2(b)) and court-appointed counsel for the alleged incompetent person (Rule 4:86-4(b))." Marsico, 436 N.J. Super. at 492 n.3.

[8] "The function of such guardian is generally to insure the protection of the rights and interests of a litigant who is apparently incompetent to prosecute or defend the lawsuit" where the incapacity is apparent. In re S.W., 158 N.J. Super. 22, 25–26 (App. Div. 1978). Where it is not,

> an action [must be filed] in accordance with [Rule 4:86] for the determination of his or her mental incompetency and the appointment of a general guardian for that person, the submission of medical proof that the alleged incompetent is unfit and unable to govern himself or herself and to manage his or her affairs, and an adjudication by the court of such incompetency after a hearing.
>
> [Id. at 26.]

interest. See Kronberg v. Kronberg, 263 N.J. Super. 632 (Ch. Div. 1993) (appointing a plaintiff's daughter as guardian in a divorce proceeding because although the daughter could benefit from the outcome, plaintiff would have wanted to sue for divorce and it was in the plaintiff's best interest to pursue the divorce). But see In re Jennings, 187 N.J. Super. 55 (Ch. Div. 1981) (rejecting a mother's application for permission to pursue divorce on behalf of her adult incapacitated adult son because there was no indication he wanted to seek a divorce and the dispute was in reality between his wife and his relatives over their eventual inheritance). Under these circumstances, as the motion judge found, plaintiff did not have standing to pursue this action.

We are not persuaded otherwise by plaintiff's contention that she demonstrated that because she managed the tavern, she had authority as her father's agent to file this action on his behalf. An agent can only take action on behalf of his or her principal if the principal has "manifest[ed] to the agent, that the principal wishes the agent" to take a specific action. N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co., 203 N.J. 208, 220 (2010) (quoting Restatement (Third) of Agency, § 2.01). Implied actual authority exists when "an agent is authorized to do what he [or she] may reasonably infer 'the principal desires him [or her] to do' in light 'of the principal's manifestations' and 'facts as

he [or she] knows or should know them' when he [or she] acts." Lampley v. Davis Mach. Corp., 219 N.J. Super. 540, 548–49 (App. Div. 1987) (quoting Lewis v. Travelers Ins., 51 N.J. 244, 251 (1968)). Here, the record contains no evidence of any written or oral statement, or any conduct by Hagan that authorized plaintiff to retain counsel and sue defendant on his behalf. Merely having allowed plaintiff to help in the tavern's operations did not amount to conduct that provided her with authority to pursue this lawsuit, and plaintiff cites no authority suggesting otherwise.

Having concluded from our de novo review that the Chancery judge correctly determined that plaintiff did not have standing to file this action, we need not address in detail plaintiff's remaining contentions. We only observe that many of them were directed toward the authenticity of defendant's alleged power of attorney, the determination of which had no bearing on plaintiff's standing. As to her other arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-5674-18T1